TAMELE ET AL. *v.* BRINKMAN, AUDITOR, ET AL.

(No. 26084—Decided January 31, 1972.)

Common Pleas Court of Medina County.

*Mr. William G. Batchelder*, for plaintiffs.
*Mr. Douglas C. Burns*, city solicitor, and *Mr. Edward Kancler*, for defendants.

WINTER, J.   On February 22, 1971, the city of Brunswick, by its city council, unanimously adopted Ordinance No. 26-71, which accepted the annexation of 119.62 acres of land to the city of Brunswick.

Section 3 of said ordinance declared it to be an emergency measure immediately necessary for the preservation of the public health, welfare and safety, and for the further reasons:

1. That it was necessary to enhance the ability of the county to meet financial commitments for payments to the Ohio Water Development Authority for the lien on Sewer District No. 5;

2. That the ability to meet such financial commitments depends on continued residential development within said sewer district; and

3. That the county's precarious financial position directly affects its ability to provide Brunswick with new or

expanded sewer facilities, and unless the annexation is rapidly adopted, such financial position will not be enhanced.

On March 2, 1971, the plaintiffs filed with defendant Laurene A. Brinkman, Auditor, a verified copy of Ordinance No. 26-71 and a true copy of a referendum petition they proposed to circulate for the purpose of having said ordinance submitted to the voters at the next general election.

Thereafter the plaintiffs presented petitions for a referendum election in respect to the ordinance.

The petitions for referendum were rejected by the defendants on the basis that under the law of Ohio an emergency ordinance is not subject to referendum.

The city of Brunswick is a noncharter, or statutory, municipal corporation, subject, therefore, to the Municipal Corporation Chapter of the Ohio Revised Code and the Constitution of the state of Ohio.

Plaintiffs seek a declaratory judgment of this court as follows:

1. That it was not necessary or proper that Ordinance No. 26-71 be adopted as an emergency measure for the immediate preservation of the public peace, health or safety of the city;

2. That the facts recited in the ordinance did not constitute a situation making it necessary or permissible that the ordinance go into immediate effect;

3. That it is contrary to the laws and the Constitution of the state to pass an ordinance accepting annexation of territory as an emergency under the provisions of R. C. 731.30;

4. That the referendum petitions filed with the defendants are valid, having been timely filed and containing therein the requisite number of signatures; and that the defendant auditor be required to certify Ordinance No. 26-71 to the Board of Elections of Medina County, Ohio, for submission to the electors of the city of Brunswick at the next succeeding general election.

The defendants contend that:

1. The amended complaint fails to state a claim upon which relief may be granted;

2. The amended complaint is not brought by the proper parties; and

3. That this court is without jurisdiction, in that the ordinance was duly enacted as emergency legislation which, as a matter of law, precludes the right of referendum.

This cause is now before the court on motions for summary judgment by both parties.

The facts in this case are undisputed. The fundamental issue presented is whether a properly enacted emergency ordinance annexing land to a municipal corporation precludes a referendum vote on such ordinance.

R. C. 731.30, which provides for the initiative and referendum of resolutions and ordinances of cities and villages, reads, in part, as follows:

"* * * emergency ordinances or measures necessary for the immediate preservation of the public peace, health, or safety in such municipal corporations shall go into immediate effect. Such emergency ordinances or measures, must, upon a yea and nay vote, received a 2/3 vote of the members elected to the legislative authority, and the reasons for such necessity shall be set forth in one section of the ordinance or other measure."

This section contains only two requisites, namely: that the measure must receive the vote of 2/3 of the members of the legislative authority; and must, in one section of the measure, contain the provision that it is "for the immediate preservation of the public peace, health or safety." (See *Youngstown* v. *Aiello*, 156 Ohio St. 32.)

For many years the law of Ohio, as reaffirmed by Judge Taft in the case of *State, ex rel. Tester,* v. *Board of Elections*, 174 Ohio St. 15, decided October 24, 1962, has recognized a municipality's authority to defeat the right of referendum on legislation by enacting such legislation as an emergency measure; and the courts have consistently held that:

"* * * the question of whether there was an emergency

is not subject to review in the courts if council has, by the required vote, determined that there was an emergency.''

However, effective December 1, 1962, the Ohio General Assembly by amendment rewrote R. C. 709.10 and other sections of R. C. Chapter 709, which for many years provided for the rights of inhabitants in the event annexation was allowed, so that the statute now provides for an effective date of an annexation in addition to inhabitants' rights, and reads in part as follows:

''The annexation shall become effective thirty days after the passage of the resolution or ordinance by the legislative authority of the municipal corporation accepting annexation, provided that if the resolution or ordinance is subjected to a referendum, the annexation, if approved by the electors, shall become effective thirty days after such approval.''

Clearly, this section recognizes the right of the electors to require the subjection of a resolution or ordinance to a referendum vote, and to that extent modifies the provisions of R. C. 731.30.

It is to be noted that R. C. Chapter 709, R. C. 709.01 to and including 709.12, are special statutes dealing with the matter of Annexation on Application of Citizen, whereas R. C. Chapter 731, R. C. 731.28 through 731.41, deal generally with the matter of ordinances and resolutions adopted by cities and villages. Therefore, in the opinion of this court, it may be said that R. C. 709.10, being in the nature of a special law, is antonymous with the provisions of R. C. Chapter 731, laws of a general nature, to the extent that the provisions of R. C. 709.10 may conflict with the provisions of R. C. Chapter 731.

As Judge Spear stated in the case of *Thomas, Sheriff,* v. *Evans,* 173 Ohio St. 140:

''Where the general provisions of a statute are found to be in conflict with the express provisions of a later act relating to a particular subject, the latter will govern although the words of the earlier general act, standing alone, would be broad enough to include the subject to which the more particular provisions relate.''

Accordingly, the general rule is that a special law repeals an earlier general law to the extent of any irreconcilable conflict between their provisions, or, speaking more accurately, it operates to engraft on the general statute, or statutes, an exception to the extent of the conflict. In other words, where the *general provisions* of a law are found to be in conflict with the *express provisions of a later act relating to a particular subject*, the latter will govern. (See 50 Ohio Jurisprudence 2d, pages 82, 83.) (Emphasis ours.)

Article II, Section 1f of the Ohio Constitution, relative to the Power of Municipalities, reads as follows:

"The initiative and referendum powers are hereby reserved to the people of each municipality *on all questions* which such municipalities may now or hereafter be authorized by law to control by legislative act; such powers shall be exercised in the manner now or hereafter provided by law." (Emphasis ours.)

As was pointed out by counsel during arguments, while Article II, Section 1f guarantees to the people of each municipality the powers of initiative and referendum, there is no means whereby the electors of a municipal corporation are empowered to disannex (to coin a word) property once it has been annexed to the municipality. In virtually all other instances legislation can be repealed and thus its effect, if undesirable, nullified.

Therefore, unless R. C. 709.10, *supra*, is interpreted to effectuate the right of referendum on a so-called emergency measure, the electorate of a municipality could be denied rights otherwise guaranteed by our Constitution.

Attention is further directed to the practice that has developed in recent years of inserting specific provisions in the charters of home rule municipal corporations to prohibit the preclusion of a referendum vote on properly enacted emergency annexation ordinances. For example, the language of Article III, Section 11 of the Charter of the city of Medina, Ohio, which reads, in part, as follows:

"No action of the council in authorizing any change in the boundaries of the city, or the surrender or joint exer-

cise of any of its powers, * * * shall be taken as an emergency measure.''
is typical of such charter prohibitions that have purposely been inserted in home rule charters for the preservation of the rights of the electorate.

The primary and paramount rule in the interpretation or construction of statutes is to ascertain, declare and give effect to the intention of the Legislature, if it is possible to do so. (See 50 Ohio Jurisprudence 2d, page 139.)

Conversely, the construction adopted should not be such as would defeat the obvious intention of the Legislature. Or, as was held in the case of *State, ex rel. Wilmot,* v. *Buckley,* 60 Ohio St. 273:

''It is not the function of a court to give to a statute an operation which the Legislature does not intend.''

Since the ultimate function of construction then is to ascertain the legislative will, the correct construction can only be given after such intention is ascertained.

Speaking advisedly and with some experience, this court is constrained to observe that there are probably as many varied legislative intents for any given measure as there are legislators answering the roll call. This is not meant to be a facetious statement, but is rather an attempt to emphasize the factual impossibility of such ascertainment.

As stated in *Bates* v. *State,* 27 Ohio App. 391, ''The language of a statute is its most natural expositor.'' Accordingly, to the extent that the provisions of R. C. 709.10 conflict with R. C. 731.30, this court is of the opinion that the law of Ohio, by virtue of the legislative enactment effective December 1, 1967, now prohibits the preclusion of a referendum vote on a properly enacted emergency ordinance accepting territory for annexation by a municipality, and conforms to the reservation of powers to the people of each municipality as provided in Article II, Section 1f of the Ohio Constitution.

While the matter will be of no further consequence in the event this opinion is sustained and should by final deter-

mination be the law of Ohio, it is further the opinion of this court that the provisions of R. C. 731.30 to the extent of the conflict with R. C. 709.10, and the law of Ohio as reaffirmed by Judge Taft in the case of *Tester* v. *Board of Elections, supra,* is unconstitutional and this court so finds.

It is to be noted that R. C. 709.01 through 709.12 were a part of Amended Substitute Senate Bill 220 that was adopted by the One Hundred Seventh General Assembly in 1967. It is reasonable to assume that this revision was intended as a modernization of that portion of R. C. Chapter 709 which deals with ''Annexation on Application of Citizen,'' as the title indicates. And, in the opinion of this court, the legislative intent therein was, among other things, to assure to the electors of a statutory municipality the same degree of protection that can be made available under a charter of a home rule municipal corporation.

No objection of record has been raised as to the timely filing of the referendum petition, or as to the requisite number of signatures. Thus, it must be concluded that insofar as these matters are concerned a referendum petition containing the requisite number of signatures of electors of the city of Brunswick was timely presented for filing with the defendant auditor.

Accordingly, the court upon consideration declares and adjudges that it is contrary to the provisions of R. C. 709.10, and the provisions of Article II, Section 1f of the Ohio Constitution, for a municipality to preclude a referendum vote on an ordinance accepting annexation of territory to a municipal corporation for the reason that said ordinance has been declared an emergency ordinance necessary for the preservation of the public peace, health or safety as provided in R. C. 731.30.

The court further finds and declares that R. C. 709.10 as now constituted conflicts with certain provisions of R. C. 731.30, and to the extent that there is an irreconcilable conflict between the provisions of these two sections, R. C. 709.10, having been enacted by the General Assembly at a more recent date, prevails.

It is further declared that Ordinance No. 26-71 is a

valid ordinance and that the Defendant Auditor of the City of Brunswick is required to certify the text of said ordinance to the Board of Elections of Medina County, Ohio, for submission to the electors of the city of Brunswick, Ohio, at the next succeeding general election, and the same is hereby so ordered.

Defendants' motion for summary judgment is overruled and plaintiffs' motion for summary judgment is granted.

Inasmuch as the foregoing order is fully dispositive of the fundamental issue presented herein, no meaningful purpose would be served by further declarations of the court herein.